## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| **Theresa Stringer, individually and on behalf of all others similarly situated pursuant to 29 U.S.C. § 216(b),** | No. 2:23-cv-00181-Z |
| *Plaintiffs,* | |
| v. | **PLAINTIFF'S MOTION FOR COURT-AUTHORIZED NOTICE** |
| **Big Texan Steak Ranch Inc.** | |
| *Defendant.* | |

**PLAINTIFF'S MOTION FOR COURT-AUTHORIZED NOTICE**

## Table of Contents

I.   INTRODUCTION .................................................................................................. 6

II.  LEGAL STANDARD ............................................................................................ 8

    A.   The pleadings and preliminary evidence, "show sufficient similarity between the plaintiffs' employment situations" to justify the issuance of court-authorized notice. .................................................................................................. 11

        1.   All servers and bartenders are subject to the same compensation and employment policies that give rise to the allegations in this lawsuit......................................... 13

        2.   All servers and bartenders are subject to the same employment policies—all required to pay for mandatory uniforms, tools, and other non-203(m) items....... 16

        3.   All servers and bartenders are subject to the same employment policies—all required to perform the same or similar job duties non-tipped duties unrelated to their tipped occupation at a subminimum hourly rate. ........................................ 17

III. PROPOSED NOTICE TO SIMILARLY SITUATED EMPLOYEES.................................... 19

## Table of Authorities

**Cases**                                                                                              **Page(s)**

*Arceo v. Orta,*
  296 F. Supp. 3d 818 (N.D. Tex. 2017) ......................................................................22

*Bancroft v. 217 Bourbon, LLC,*
  No. 21-545, 2021 U.S. Dist. LEXIS 250340 (E.D. La. Jan. 13, 2021) ...............................20, 22

*Black v. SettlePou, P.C.,*
  2011 U.S. Dist. LEXIS 15493 (N.D. Tex. Feb. 14, 2011) ........................................................21

*Cervantez v. TDT Consulting, LLC,*
  2019 U.S. Dist. LEXIS 142907 (N.D. Tex. July 22, 2019) ......................................................20

*Contreras v. Land Restoration LLC,*
  2017 WL 663560 (W.D. Tex. 2017) .........................................................................................22

*Dyson v. Stuart Petroleum Testers, Inc.,*
  308 F.R.D. 510 (W.D. Tex. 2015) ............................................................................................22

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) .................................................................................................................11

*Espinosa v. Stevens Tanker Div., LLC,*
  2017 U.S. Dist. LEXIS 64188 (W.D. Tex. 2017) .......................................................................9

*Ettorre v. Russos Westheimer, Inc.,*
  2022 U.S. App. LEXIS 7295 (5th Cir. Mar. 18, 2022) ........................................................7, 15

*Goss v. Tyler Traditions, Inc.,*
  2019 U.S. Dist. LEXIS 175693 (E.D. Tex. July 22, 2019) ......................................................21

*Hoffman v. Sbarro, Inc.,*
    982 F. Supp. 249 (S.D.N.Y. 1997) ..............................................................................13

*Hoffmann-La Roche Inc. v. Sperling,*
    493 U.S. 165, 169 (1989)...............................................................9, 10, 11, 12, 19

*In re JPMorgan Chase & Co.,*
    916 F.3d 494 (5th Cir. 2019) ...........................................................................9, 10, 11

*Kibodeaux v. A&D Interests, Inc.,*
    579 F. Supp. 3d 896 (S.D. Tex. 2022) .............................................................21

*Klick v. Cenikor Found., No. 22-20434,*
    2023 U.S. App. LEXIS 21389 (5th Cir. Aug. 16, 2023) ...........................................9

*Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) Ltd. Liab. Co.,*
    No. 4:21-CV-00124, 2022 U.S. Dist. LEXIS 105113 (E.D. Tex. June 13, 2022) ....................15

*Maynor v. Dow Chem. Co.,*
    2008 U.S. Dist. LEXIS 42488 (S.D. Tex. 2008) ........................................................11

*Montano v. Montrose Rest. Assocs.,*
    800 F.3d 186 (5th Cir. 2015) ..............................................................................7, 15

*Paschal v. Perry's Rests. Ltd.,*
    No. 1:22-cv-00027, 2022 U.S. Dist. LEXIS 216845 (W.D. Tex. Nov. 30, 2022)........10, 12, 14

*Paschal v. Perry's Rests., Ltd.,*
    No. 1:22-CV-00027-RP, 2023 U.S. Dist. LEXIS 59516 (W.D. Tex. Apr. 4, 2023), *adopted by*,
    2023 U.S. Dist. LEXIS 85186 (W.D. Tex. May 16, 2023).....................................15, 16, 18, 20

*Sandoz v. Cingular Wireless, LLC,*
    553 F.3d 913 (5th Cir. 2008) ...............................................................................19

*Segovia v. Fuelco Energy LLC, No. SA-17-CV-1246-JKP,*
  2021 U.S. Dist. LEXIS 101258 (W.D. Tex. May 28, 2021) .................................8, 9, 10, 12, 18

*Soto v. Marquez Constr. & Maint.,*
  No. 20-CV-00101, 2021 U.S. Dist. LEXIS 171040 (W.D. Tex. Apr. 9, 2021)..............20, 21, 22

*Sperling v. Hoffmann-La Roche, Inc.*
  118 F.R.D. 392, 406 (D.N.J. 1988), *aff'd,* 493 U.S. 165 (1989) ...........................................9, 12

*Swales v. KLLM Transp. Servs., L.L.C.,*
  985 F.3d 430, 443 (5th Cir. 2021)....................................................................8, 9, 11, 13, 18, 19

*T.S. v. Burke Found,*
  521 F. Supp. 3d 691 (W.D. Tex. 2021) ..................................................................................9, 11

*Tillis v. Glob. Fixture Servs., No. 4:19-CV-01059,*
  2020 U.S. Dist. LEXIS 49447 (S.D. Tex. Mar. 23, 2020) ........................................................19

*Tyson Foods, Inc., Tyson Foods, Inc. v. Bouaphakeo,*
  577 U.S. 442 (2016) ............................................................................................................10, 11

**Statutes**

15 U.S.C. § 7001    ..............................................................................................................22

29 U.S.C. § 203    ................................................................................................................7

29 U.S.C. § 216    ............................................................................................................8, 22

29 U.S.C. § 256    ..............................................................................................................19

TEX. BUS. COM. CODE § 322.007    ..................................................................................22

**Other**

Fed. R. Civ. P. 23    ...........................................................................................................11

## I.    INTRODUCTION

Plaintiff, Theresa Stringer ("Stringer") and Opt-in Plaintiffs[1] (collectively, "Plaintiffs") work or worked for Big Texan Steak Ranch Inc. ("Big Texan" or "Defendant"). Defendant utilizes the same compensation structure to pay all servers and bartenders; and uniformly subjects all servers and bartenders, including Plaintiffs, to the same employment policies at Defendant's restaurant *commonly known as* Big Texan.

Plaintiffs worked as servers and bartenders for Defendant and were all paid a direct subminimum hourly wage of less than $7.25 per hour and, in violation of the Fair Labor Standards Act ("FLSA"), were illegally (1) required to contribute a portion of their tips to a tip pool that Defendant cannot show the tips pooled were distributed solely among customarily and regularly tipped employees; (2) required to perform non-tipped work unrelated to their tipped occupation (i.e., "dual jobs") before, during, and at the end of their shifts at a subminimum hourly rate; and (3) and required to pay for mandatory uniforms, tools, and other non-203(m) items.

This action challenges Defendant's common policy that utilizes servers and bartenders to perform non-tipped job duties unrelated to their tipped occupation at a at a subminimum hourly rate at it dining establishment—Big Texan. Defendant's practice of paying all servers and bartenders a subminimum hourly rate of less than $7.25 per hour for the time spent performing non-tipped work unrelated to their tipped occupation (before, during, and at the end of each shift) violates the FLSA's minimum wage and tip credit provisions. Defendant also requires all servers and bartenders to pay for mandatory uniforms, tools, and other non-203(m) items. *See Ettorre v.*

---

[1]    In addition to Plaintiff, Stringer, there are 36 Opt-in Plaintiffs (i.e., servers and bartenders who worked for Defendant at Big Texan) who filed their consent to join this action prior to filing this Motion for Court-Authorized Notice.

*Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, at *9 (5th Cir. Mar. 18, 2022) (finding a "deduction violates § 203(m) unless the 'facilities' it covers counts as a 'wage'....The cost of uniforms and their laundering is primarily for the benefit of the employer and is thus unreasonable.") (citing 29 C.F.R. § 531.3(d)(2)(iii)).

Defendant also paid all servers and bartenders in the same manner—a subminimum hourly wage of less than $7.25 per hour plus tips. As such, Defendant relies on tips generated from customers to supplement the servers' and bartenders' subminimum hourly rate to bring their effective rate of pay up to the required minimum wage of $7.25 per hour. However, in violation of the FLSA's tips credit provision, an *affirmative defense*[2] to the payment of the full minimum wage, Defendant required all servers to contribute 3% percentage of each servers' tips to a mandatory tip at the end of each shift, which Defendant cannot show was fully distributed solely among customarily and regularly tipped employees. *See Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 189 (5th Cir. 2015) (citing *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011) (holding defendant "ha[s] the burden to prove it operated a legal tip pool")) (citations omitted).

As a result of Defendant's common policies applied to all servers and bartenders, Defendant is barred from utilizing the tip credit under 29 U.S.C. § 203(m)—an *affirmative defense* and cannot supplement the servers' or bartenders' wages with tips. Plaintiffs and potential opt-in plaintiffs are therefore owed wages for their unpaid minimum hourly wage and misappropriated tips resulting from the same unlawful policies—forced sharing of tips with nontipped employees, required to perform non-tipped unrelated job duties at a subminimum hourly rate of less than $7.25

---

[2]  "The employer bears the burden to prove it is entitled to the tip credit." *Ettorre*, 2022 U.S. App. LEXIS 7295, at *5-7 (citing *Montano*, 800 F.3d 186, 189).

per hour, and required to pay for mandatory uniforms—in violation of the FLSA.

Pursuant to 29 U.S.C. § 216(b), Plaintiffs seeks to certify and send court-authorized notice to the proposed collective of similarly situated employees ("Collective Members") defined as:

**Server Collective Members:** All current and former employees who worked at least one shift as a server for Defendant at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage.[3]

**Bartender Collective Members: A**ll current and former employees who worked at least one shift as a bartender for Defendant at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage. [4]

Under *Swales*, notice to other potential opt-in plaintiffs of this collective action is appropriate because the pleadings and preliminary evidence shows that Plaintiffs are similarly situated to the proposed collective of employees they seek to notify of this action. Specifically, all servers and bartenders are subject to the same job requirements, job duties, and paid in the same manner—pursuant to the tip credit—and therefore are all similarly situated regarding Defendant's compensation and employment policies at issue in this lawsuit.

As discussed below, Plaintiffs have met the burden by showing that Plaintiffs and the proposed collective are "sufficiently similarly situated such that this case should proceed on a collective basis[]" and therefore, entitled to receive notice of their right to join this action pursuant to Section 216(b) of the FLSA. *See e.g.*, *Segovia v. Fuelco Energy LLC*, No. SA-17-CV-1246-JKP, 2021 U.S. Dist. LEXIS 101258, at *15 (W.D. Tex. May 28, 2021) (citations omitted).

## II.   LEGAL STANDARD

Section 216(b) of the FLSA "permits employees to bring an FLSA action against their

---

[3]   *See Compl.*, [ECF 1 p. 10 ¶ 19].

[4]   *See Compl.*, [ECF 1 p. 10 ¶ 19].

employer on 'behalf of himself or themselves and other employees similarly situated.'" *Segovia*, 2021 U.S. Dist. LEXIS 101258, at *15. "Unlike class actions [] under Fed. R. Civ. P. 23, which require plaintiffs to 'opt-out' of the class, an FLSA collective action requires plaintiffs to 'opt-in' to become part of the class." *Id.*, at *15 (citations omitted). "To keep the opt-in process efficient, district courts 'have discretion' to 'facilitat[e] notice to potential plaintiffs.'" *T.S. v. Burke Found*, 521 F. Supp. 3d 691, 695 (W.D. Tex. 2021) (citing *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)). As the court explained, in *Sperling v. Hoffmann-La Roche, Inc.*, "[i]f courts refrain from facilitating notice to missing class members, the enforcement of [] remedies for violations which victimize a group of people will be limited only to those victims who are already known to their 'champion,' [] or who are fortunate enough to hear and heed 'the vagaries of rumor and gossip,' [] or who are courageous enough to recognize the wrong done them and sue on their own." 118 F.R.D. 392, 403 (D.N.J. 1988) (citations omitted).

Indeed, as the Fifth Circuit recently held, "[a] showing that members of a collective action are similarly situated does not require members to be identically situated but requires plaintiffs to show a demonstrated similarity between the purported collective, such as a factual nexus that binds the claims together so that hearing all claims in one proceeding is fair to all parties and not beset with individual inquiries." *Klick v. Cenikor Found.*, No. 22-20434, 2023 U.S. App. LEXIS 21389, at *14 (5th Cir. Aug. 16, 2023) (citing *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 443 (5th Cir. 2021)); *Espinosa v. Stevens Tanker Div., LLC*, Civil Action No. SA-15- CV-879-XR, 2017 U.S. Dist. LEXIS 64188, at *9 (W.D. Tex. 2017) ("District courts in the Fifth Circuit have repeatedly stated that plaintiffs need only be similarly situated, not identically situated."); *Segovia*,

2021 U.S. Dist. LEXIS 101258, at *22-23 (stating that "[f]rom the statutory text, 'similarly situated,'" requirement for an FLSA collective action, "clearly differs from 'identically situated.'" And "'courts are adamant' that plaintiffs need not establish identical situations to carry their burden to show 'similarly situated.'")) (citation omitted). Therefore, "the court must instead ask whether a plaintiff has 'demonstrated similarity among the individual situations.'" *Paschal v. Perry's Rests. Ltd.*, No. 1:22-cv-00027-RP, 2022 U.S. Dist. LEXIS 216845, at *6 (W.D. Tex. Nov. 30, 2022) (citation omitted).

Moreover, "when the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification." *Segovia*, 2021 U.S. Dist. LEXIS 101258, at *31-32 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 457 (2016) (citation omitted)) (internal quotation marks omitted). At this time, the focus is not whether there has been an actual violation or whether Plaintiffs can meet their burden for summary judgment, but whether Plaintiffs and potential opt-in plaintiffs are similarly situated—such, that "facilitating notice is [] need[ed] for [the] 'efficient resolution in one proceeding of common issues' of law and fact arising from the same alleged discriminatory activity." *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019) (citing *Hoffmann-La Roche*, 493 U.S. at 170, 172-173)); *see also Segovia*, 2021 U.S. Dist. LEXIS 101258, at *20 (". . .similarly situated determination is not 'an opportunity for the court to assess the merits of [any] claim by deciding factual disputes or making credibility determinations. . . .'")(internal brackets in original).

This is further exemplified under Fed. R. Civ. P. 23—a more rigorous standard for class certification that *does not* require the party seeking certification "to prove the merits of the class

claim or even to establish a probability that the action will be successful." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) (emphasis added). Even under the more rigorous Rule 23 standard, here, the "common question [whether defendant's common policies violate the tip credit provision of the FLSA] is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc.*, 577 U.S. 442 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.").[5]

Unlike the plaintiffs in *Swales* and *In re JP Morgan*, here, the similarly situated determination does not involve "potentially dispositive, threshold matters" that, if ignored until after notice is issued, would result in "alerting those who cannot ultimately participate in the collective [which] 'merely stirs up litigation,' [] [] what *Hoffmann-La Roche* flatly proscribes." *In re JPMorgan*, 916 F.3d at 502 (citing *Hoffmann-La Roche*, 493 U.S. at 174).

**A.**     **The pleadings and preliminary evidence, "show sufficient similarity between the plaintiffs' employment situations" to justify the issuance of court-authorized notice.**

To satisfy their burden, plaintiffs "must establish substantial allegations" that Plaintiffs and the proposed collective members "were together the victims of a single decision, policy, or plan infected by discrimination.'" *T.S.*, 521 F. Supp. 3d 691, 696 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 n.8.  Plaintiffs may satisfy their burden by showing "a factual nexus that

---

[5]     *See also Maynor v. Dow Chem. Co.*, No. G-07-0504, 2008 U.S. Dist. LEXIS 42488, at *1, 24-26 (S.D. Tex. 2008) (Some employees accepted DOL settlement payments and amounts owed to Plaintiff's deferred. The Court stated that these "arguments appear to relate to [] potential damages owed to each class member, not to whether the proposed class members are similarly situated with respect to the employment policy alleged to violate the FLSA[.]").

binds [plaintiffs] and [] potential collective [] members as alleged victims of a particular policy or practice. . . .", here—that is, all servers and bartenders at Defendant's restaurant—Big Texan are "'similarly situated' with respect to their wages such that notice should issue under 29 U.S.C. § 216(b)." *See Paschal*, 2022 U.S. Dist. LEXIS 216845, at *12 (citation omitted).

"In determining whether an FLSA plaintiff has met his or her burden, courts often look at 'whether potential plaintiffs were identified, . . . whether affidavits of potential plaintiffs were submitted, . . . and whether evidence of a widespread discriminatory plan was submitted.'" *T.S.*, 521 F. Supp. 3d 691, 696 (citation omitted). Here, like in *Sperling v. Hoffmann-La Roche, Inc.*, "[p]laintiffs have made detailed allegations in their pleadings, and have supported those allegations with affidavits. . . ." and "[p]laintiffs' allegations, as supported, describe a single decision, policy, or plan of defendant's, infected by a discriminatory aspect" which led to the misappropriation of tips and unpaid minimum wages of every member of the proposed collective Plaintiffs seek to represent. *See Sperling v. Hoffmann-La Roche, Inc.* 118 F.R.D. 392, 406 (D.N.J. 1988) (based on plaintiffs pleadings and allegations supported by affidavits describing the "single decision, policy, or plan," the court held that "the record in this case on the 'similarly situated' issue is sufficiently developed at this time to allow court-facilitated class notice."), *aff'd in part and appeal dismissed in part*, 862 F.2d 439, *aff'd, Hoffmann-La Rouche, Inc.*, 493 U.S.165; *see also Segovia*, 2021 U.S. Dist. LEXIS 101258, at *28 (finding "similarities of [plaintiffs] factual and employment setting supports proceeding as a collective action" and noting that "'the question is not whether Plaintiffs all have the same exact work day,' but rather 'whether they are all subjected to a common policy, plan, or practice—the same factual and employment settings.'") (citations omitted).

**1.   All servers and bartenders are subject to the same compensation and employment policies that give rise to the allegations in this lawsuit.**

The essential determination presented is whether the putative class is "similarly situated" to the named plaintiffs. *Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997). Indeed, *Swales* directs district courts to identify what facts and legal considerations will be material to determining whether a group of employees is "similarly situated." *Swales*, 985 F.3d at 440-443.

Here, in this case, the "similar" considerations for —

Plaintiffs and the Server Collective Members are whether Defendants utilized the tip credit to pay all servers, whether all of Defendants' servers contributed tips to a tip pool, performed nontipped job duties unrelated to their tipped occupation, and were required to pay for uniforms and other non-203(m) items; and

Plaintiffs and the Bartender Collective Members are whether Defendants utilized the tip credit to pay all bartenders, whether all of Defendants' bartenders performed nontipped job duties unrelated to their tipped occupation and were required to pay for uniforms and other non-203(m) items.

As discussed below, Defendant's policy of paying less than minimum wage and denying tipped employees a substantial part of their tips presents common issues of an FLSA violation that is common to all of Defendant's servers and bartenders.

Plaintiffs and the proposed collectives of servers and bartenders share sufficient similar factual and employment settings, with each employee—all servers and bartenders at Big Texan performed the same or similar work under the same terms, pay provisions, and policies or practices. In demonstrating similarity, Plaintiffs cite to facts showing that all servers and bartenders are paid in the same manner—a subminimum hourly wage plus tips, as a well as Defendant's employment policies—*tip pooling policies*: requiring all servers to contribute tip to a mandatory tip pool*; uniform policies*: requiring all servers and bartenders to pay for uniforms and other non-203(m) items; *side*

*work policies*: requiring all servers and bartenders to perform nontipped job duties unrelated to their tipped occupation before, during, and after each shift at a subminimum hourly wage. *See e.g., Paschal*, 2022 U.S. Dist. LEXIS 216845, at *6. ("Similarity may be shown through employees' job duties, pay structure, and work policies and procedures.").

Defendant employed Plaintiffs and many other individuals as servers and bartenders—all subject to the same compensation structure (*i.e.*, paid a subminimum hourly wage plus tips) and the same employment policies at Big Texan. *See* Ex. 5 at App. 12-80, (Johnson Paystubs, 1/2021–1/2024) (paid $2.13 per hour as a server); Ex. 6 at App. 81-102 (Shanen Paystubs, 12/2020–08/2022) (paid $2.13 per hour as a server); Ex. 7 at App. 103-125 (Nunez Paystubs, 1/2021–12/2022) (paid $2.13 per hour as a server); Ex. 8 at App. 126-153 (Garcia Paystubs, 1/2021-2/2024) (paid $2.13 per hour as a server); Ex. 9 at App. 154-180 (Whitner Paystubs, 1/2021-10/2023) (paid $2.13 per hour as a server and paid $6.75 as a bartender); Ex. 10 at App. 181-207 (Cera Paystubs, 1/2021-2/2023) (paid $2.13 per hour as a server and paid $6.75 per hour as a bartender); Ex. 11 at App. 208-221 (Stringer Paystubs, 3/2023-11/15/2023) (paid $2.13 per hour as a server and $6.75 per hour as a bartender). *See also* Ex. 2 at App. 4 (Johnson Decl. ¶¶ 2-3); Ex. 1 at App. 1 (Shahen Decl. ¶¶ 2-3); Ex. 3 at App. 6 (Whitner Decl. ¶¶ 3-4); Ex. 4 at App. 9 (Nunez Decl. ¶¶ 2-4); Ex. 21 (Lee Phase 1 Corp. Rep. Depo. Tr., at 56:21-23; 75:25-76:3; 76:17-77:3; 77:8-10; 80:2-5) (testifying as to servers $2.13 hourly rate and bartenders base wage of $6.75 per hour).

Specifically, all servers and bartenders were paid in the same manner—a subminimum hourly rate per hour plus tips, *see Id.*; and all servers are subject to the same mandatory tip pooling policy implemented by Defendant at its restaurant—Big Texan. *See also* Ex. 2 at App. 4 (Johnson

Decl. ¶ 5); Ex. 1 at App. 1 (Shahen Decl. ¶ 5); Ex. 3 at App. 6 (Whitner Decl. ¶ 7); Ex. 4 at App. 9 (Nunez Decl. ¶¶ 2-5); Ex. 21 (Lee Phase 1 Corp. Rep. Depo. Tr., at 56:21-57:1; 68:20-25; 134:1-6)

Here, Plaintiffs allege that, in violation of the FLSA's tip credit, an *affirmative defense*[6] to the payment of the full minimum wage, Defendant required all servers to contribute 3% percentage of each servers' tips to a mandatory tip at the end of each shift, which Defendant cannot show was distributed among customarily and regularly tipped employees. *See* Ex. 20 at App. 253-254 (Big Texan: Server Assistant Job Description); Ex. 21 (Lee Phase 1 Corp. Rep. Depo. Tr., at 61:21-22; 64:7-22). *See also* Ex. 1 at App. 1 (Johnson Decl. ¶ 5); Ex. 1 at App. 1 (Shahen Decl. ¶ 5); Ex. 3 at App. 6 (Whitner Decl. ¶¶ 6-7); Ex. 4 at App. 9 (Nunez Decl. ¶ 5). *See e.g., Montano*, 800 F.3d 186, 189 (citing *Roussell*, 441 F. App'x 222, 230 (holding that a restaurant "had the burden to prove it operated a legal tip pool")) (citations omitted).

Therefore, like in *Garcia-Alvarez,* Plaintiffs and the other the servers "to whom they want to send notice to [] have similar job duties and are all subject to the same unlawful pay policy—an invalid tip pooling arrangement." *Garcia-Alvarez v. Fogo De Chao Churrascaria (Pittsburgh) Ltd. Liab. Co.*, No. 4:21-CV-00124, 2022 U.S. Dist. LEXIS 105113, at *31 (E.D. Tex. June 13, 2022); *see also Paschal v. Perry's Rests., Ltd.*, Civil Action No. 1:22-CV-00027-RP, 2023 U.S. Dist. LEXIS 59516, at *10 (W.D. Tex. Apr. 4, 2023) (finding the same defense applies to all plaintiffs and recommending "District Court certify Plaintiffs' claims that Defendants included ineligible employees in the tip pool and distributed tip pool funds to employees who were not staffed for a particular shift[]"), *adopted by*, 2023 U.S. Dist. LEXIS 85186 (W.D. Tex. May 16, 2023).

---

[6]   "The employer bears the burden to prove it is entitled to the tip credit." *Ettorre*, 2022 U.S. App. LEXIS 7295, at *5-7 (citing *Montano*, 800 F.3d 186, 189).

> **2. All servers and bartenders are subject to the same employment policies—all required to pay for mandatory uniforms, tools, and other non-203(m) items.**

All servers and bartenders are subject to the same unlawful policy regarding deductions and charged for mandatory uniforms, tools, and other non-203(m) items required to work for Defendant at its restaurant—Big Texan. *See* Ex. 12 at App. 222 (Big Texan: Dress Code); Ex. 13 at App. 223 (Big Texan: Server Dress Code); Ex. 14 at App. 224 (Big Texan: Bartender Dress Code); Ex. 15 at App. 225 (Big Texan: Uniform Policy, Summer Attire). *See also* Ex. 2 at App. 5 (Johnson Decl. ¶ 8); Ex. 1 at App. 2 (Shahen Decl. ¶ 9); Ex. 3 at App. 7 (Whitner Decl. ¶ 10); Ex. 4 at App. 10 (Nunez Decl. ¶ 9).

Moreover, at Big Texan, Defendant requires all servers, including Plaintiffs and Collective Members to sign the same uniform policy. *See* Ex. 12 at App. 222 (Big Texan: Dress Code); Ex. 13 at App. 223 (Big Texan: Server Staff Dress Code); Ex. 14 at App. 224 (Big Texan: Bartender Dress Code). *See also* Ex. 21 (Lee, Phase 1 Corp. Rep. Depo. Tr., at 107:3-5; 107:9-11; 107:18-108:1; 112:8-11; 112:25-113:5). Pursuant to Defendant's uniform policies implanted at Big Texan—all servers and bartenders are required to pay for mandatory uniforms and other non-203(m), including items such as cowboy hat, western style shirts, cowboy boots, server book. *See* Ex. 12 at App. 222 (Big Texan: Dress Code); Ex. 13 at App. 223 (Big Texan: Server Dress Code); Ex. 14 at App. 224 (Big Texan: Bartender Dress Code). *See also* Ex. 21 (Lee, Phase 1 Corp. Rep. Depo. Tr., at 107:3-5; 107:9-11; 107:18-108:1; 112:8-11).

As a result, all servers and bartenders were subject to a common policy implemented by Defendant that illegally shifted its costs and business expenses onto its employees who were paid a subminimum hourly wage pursuant to the tip credit. *See, e.g.*, *Paschal*, 2023 U.S. Dist. LEXIS 59516, at *18-19 (certifying a collective of servers who were subjected to the same policy—i.e.,

deducted and paid for mandatory uniform and other business-related items).

### 3. All servers and bartenders are subject to the same employment policies—all required to perform the same or similar job duties non-tipped duties unrelated to their tipped occupation at a subminimum hourly rate.

All servers and bartenders are subject to the same compensation and pay policies, job duties, and side work policies that give rise to the allegations in this collective action, and therefore are similarly situated. *See* Ex. 21 (Lee, Phase 1 Corp. Rep. Depo. Tr., at 88:5-12); Ex. 16 at App. 226 (Big Texan: Openers Checklist); Ex. 17 at App. 227-248 (Big Texan: AM and PM Side Work Assignments); Ex. 18 at App. 249-251 (Big Texan: Cleaning Duties); Ex. 19 at App. 252 (Big Texan: Daily Bar Cleaning Duties).

Indeed, Plaintiffs and the proposed collective of servers and bartenders are all paid a subminimum hourly wage to perform a number of non-tipped duties unrelated to their tipped occupation as servers and bartenders, including but not limited restaurant deep cleaning;[7] cleaning different areas of the restaurant; washing and scrubbing food trays; cleaning, stocking, and organizing dressing cooler; preparing ranch dressing containers and other garnishes—i.e., bacon, cheese, and chives for the bake potatoes loaded cups in the kitchen or on the line; and other back-of-the-house tasks unrelated to the servers and bartenders tipped occupation all at a subminimum hourly. *See* Ex. 17 at App. 227-248 (Big Texan: AM and PM Side Work Assignments); Ex. 19 at App. 252 (Big Texan: Daily Bar Cleaning Duties); Ex. 2 at App. 4-5 (Johnson Decl. ¶¶ 6-7); Ex. 1 at App. 2 (Shahen Decl. ¶¶ 7-8); Ex. 3 at App. 7 (Whitner Decl. ¶¶ 8-9); Ex. 4 at App. 10 (Nunez Decl. ¶¶ 7-8). *See also* Ex. 17 at App. 227-248 (Big Texan: AM and PM Side Work Assignments) (identifying various duties, including washing and scrubbing food trays; taking out the trash); Ex.

---

[7]    *See* Ex. 18 at App. 246 (assigning deep cleaning to all employees).

19 at App. 252 (Big Texan: Daily Bar Duties) (identifying various cleaning duties such as dusting all TVs, rinsing and wiping trash cans, wiping down fans in the service area, detail cleaning the service area, polishing all reach in doors and vents).

Yet, Plaintiffs and Collective Members were only paid subminimum hourly wage to perform non-tipped work unrelated to their work as servers and bartenders. *See* Ex. 2 at App. 4-5 (Johnson Decl. ¶¶ 6, 9); Ex. 1 at App. 2 (Shahen Decl. ¶ 7); Ex. 3 at App. 0 (Whitner Decl. ¶¶ 8-9); Ex. 4 at App. 10 (Nunez Decl. ¶ 7). *See also* Ex. 5 at App. 12-80, (Johnson Paystubs) (paid $2.13 per hour as a server); Ex. 6 at App. 81-102 (Shanen Paystubs) (paid $2.13 per hour as a server); Ex. 7 at App. 103-125 (Nunez Paystubs) (paid $2.13 per hour as a server); Ex. 8 at App. 126-153 (Garcia Paystubs) (paid $2.13 per hour as a server); Ex. 9 at App. 154-180 (Whitner Paystubs) (paid $2.13 per hour as a server and $6.75 as a bartender); Ex. 10 at App. 181-207 (Cera Paystubs) (paid $2.13 per hour as a server and $6.75 per hour as a bartender); Ex. 11 at App. 208-221 (Stringer Paystubs) (paid $2.13 per hour as a server and $6.75 per hour as a bartender).

Like in *Paschal*, here, "the common issue whether Defendant[] required servers [and bartenders] to perform unrelated. . .work predominates over individual differences." *Paschal* 2023 U.S. Dist. LEXIS 59516, at *16-17 (citing *Segovia*, 2021 U.S. Dist. LEXIS 101258, at *28) ("[T]he question is not whether Plaintiffs all have the same exact work day, but rather whether they are all subjected to a common policy, plan, or practice—the same factual and employment settings.") (internal quotation marks omitted)).

Under the *Swales* standard, notice to other potential opt-in plaintiffs of this collective action is appropriate because the pleadings and preliminary evidence shows that Plaintiffs and Opt-in Plaintiffs are similarly situated to the putative collective of employees they seek to notify of this

action. Specifically, Plaintiffs have sufficiently shown that all servers and bartenders are subject to the same or similar job requirements and job duties, and paid in the same manner—a subminimum hourly wage of less than $7.25 plus tips—and therefore all are similarly situated with regards to Defendant's policies and payment scheme at issue in this lawsuit. Therefore, Plaintiffs have met the burden under the *Swales* standard to justify the issuance of notice of this collective action.

### III.    PROPOSED NOTICE TO SIMILARLY SITUATED EMPLOYEES

"Federal judges have the power to authorize the sending of notice to potential FLSA class member to inform them of the action and to give them opportunity to participate by opting in. . . .[,]" after determining, at the onset of a case, that potential opt-in plaintiffs are similarly situated to plaintiffs. *See Tillis v. Glob. Fixture Servs.*, No. 4:19-CV-01059, 2020 U.S. Dist. LEXIS 49447, at *18 (S.D. Tex. Mar. 23, 2020) (citing *Hoffmann-La Roche Inc.*, 493 U.S. at 169-70). "Notice is particularly important for FLSA collective actions as potential plaintiffs' statutes of limitations continue to run unless and until a plaintiff 'gives his [or her] consent in writing to become a party and such consent is filed in the court in which such action is brought.'" *Tillis*, 2020 U.S. Dist. LEXIS 49447, at *18 (citations omitted). Accordingly, notice to potential collective members is necessary in making an informed decision about joining this action and preserving their claims for unpaid wages by tolling the statute limitations.[8]

Plaintiffs therefore respectfully request this Court to certify the proposed collective of similarly situated employees and authorize Plaintiffs' counsel to send the notices *attached as*

---

[8] The limitations period is not tolled with respect to the other potential plaintiff's until he or she files a consent with the court opting-in. 29 U.S.C. § 256; *Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 916-17 (5th Cir. 2008) (citing *Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n. 5 (5th Cir. 1983); *Quintanilla v. A & R Demolitina, Inc.*, No. Civ. A. H-04-1965, 2005 WL 2095104, at *16 (S.D. Tex. Aug. 30, 2005). As a result, each day that goes by before other servers are provided with notice and file a consent to opt-in is one less day for which he or she may recover the wages owed by Defendant.

Exhibits 22 through 24 to this motion via the avenues requested below, to the similarly situated employees in the proposed collectives defined as:

> **Server Collective Members:** All current and former employees who worked at least one shift as a server for Defendant at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage.[9]

> **Bartender Collective Members: A**ll current and former employees who worked at least one shift as a bartender for Defendant at any time within the three (3) year period since this Complaint was filed and were paid a direct cash wage of less than minimum wage. [10]

Plaintiffs respectfully request that Defendant be ordered to produce, within fourteen (14) days of granting this Motion, a list in a useable electronic (.xls) format of names, last known addresses, telephone numbers, e-mail addresses, and dates of employment for all members of the collective. *See, e.g, Soto v. Marquez Constr. & Maint.*, No. 20-CV-00101, 2021 U.S. Dist. LEXIS 171040, at \*8 (W.D. Tex. Apr. 9, 2021) (ordering Defendants, within 14 days of granting Plaintiffs' motion, to provide Plaintiffs' counsel with "the names, last known addresses, e-mail addresses, of the potential opt-in plaintiffs in a useable electronic format[]"); *Bancroft v. 217 Bourbon, LLC*, No. 21-545, 2021 U.S. Dist. LEXIS 250340, at \*16 (E.D. La. Jan. 13, 2021) (ordering Defendants, within 14 days of the court's order, to provide "the names, last-known addresses, email addresses, and telephone numbers (including known cell phone numbers) of all putative collective action members"); *Paschal*, 2023 U.S. Dist. LEXIS 59516, at \*24.

Plaintiffs request to send the proposed Notice and Consent form (*attached as* Exhibit 22) by mail, and the proposed notice (*attached as* Exhibit 23) via email and text message to putative

---

[9]  *See Compl.*, [ECF 1 p. 10 ¶ 19].

[10]  *See Compl.*, [ECF 1 p. 10 ¶ 19].

collective members. *See Cervantez v. TDT Consulting, LLC*, 2019 U.S. Dist. LEXIS 142907, at *34

(N.D. Tex. July 22, 2019) (granting plaintiffs' "request to distribute the Notice through mail,

email, text message . . . ."); *Kibodeaux v. A&D Interests, Inc.*, 579 F. Supp. 3d 896, 911 (S.D. Tex.

2022) (permitting, and stating, that "mail, e-mail, and text-message notice will all help facilitate

the FLSA's overarching goal of providing potential class members the opportunity to join the case

and, therefore, will allow all three forms of notice"). *See also Memorandum and Recommendation* at

p. 2, *Loebsack v. Dufresne Spencer Grp., LLC*, Civil Action No. 4:21-cv-1884 (S.D. Tex. July 11,

2022), ECF 37 ("Because email and text message are common methods of modern communication,

providing such contact information serves the purpose of informing potential class members of the

lawsuit and providing them the opportunity to join the case.") (citation omitted); *Goss v. Tyler

Traditions, Inc.*, No. 6:18-CV-423-JDK, 2019 U.S. Dist. LEXIS 175693, at *16-17 (E.D. Tex. July

22, 2019) ("[C]ourts have found there is high employee turnover in the restaurant industry, which

counsels in favor of allowing text messages here.").

Plaintiffs request leave for their counsel to be permitted to maintain a website limited to

posting the approved Notice and Consent Form (*see* Exhibit 23). *See Soto*, 2021 U.S. Dist. LEXIS

171040, at *9 (permitting Plaintiffs' counsel to "send an email message that contains the Court-

approved message and a link to a website containing electronic copies of the Court-approved

Notice and Consent forms that can be electronically signed . . . and electronically returned to

Plaintiffs' counsel . . . ."); *Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2011 U.S. Dist. LEXIS

15493, at *16 (N.D. Tex. Feb. 14, 2011) (authorizing Plaintiffs' counsel "to maintain an internet

website for the purpose of informing similarly situated persons of their right to opt into this

litigation."). Plaintiffs also request that potential opt-in plaintiffs be afforded the opportunity to

electronically sign their consent forms.[11]

Plaintiffs request a ninety (90) day opt-in period from the initial date of transmitting the proposed notice and consent forms. *See Soto*, 2021 U.S. Dist. LEXIS 171040, at *8 (permitting 90-day opt-in period); *Arceo v. Orta*, 296 F. Supp. 3d 818, 826 (N.D. Tex. 2017) (permitting ninety (90) day opt in period) (citations omitted). After the passage of thirty (30) days, Plaintiffs request permission to send a reminder notice (*attached as* Exhibit 24) to putative collective members who have not yet responded to the initial notice and consent form. *See Soto*, 2021 U.S. Dist. LEXIS 171040, at *9 (permitting reminder notice via e-mail); *Bancroft*, 2021 U.S. Dist. LEXIS 250340, at *17 (permitting reminder notice via U.S. mail, email, and text message); *Contreras v. Land Restoration LLC,* 2017 WL 663560, *9 (W.D. Tex. 2017) (permitting reminder notices).

*        *        *

Accordingly, for each of the foregoing reasons, Plaintiffs respectfully request this Court to certify this case pursuant to 29 U.S.C. § 216(b) and authorize notice to the Putative Collective Members via the methods set forth above. Finally, Plaintiffs request all such other relief to which they may be justly entitled.

Respectfully submitted,

By: */s/ Drew N. Herrmann*
      Drew N. Herrmann
      Texas Bar No. 24086523
      drew@herrmannlaw.com
      Pamela G. Herrmann
      Texas Bar No. 24104030
      pamela@herrmannlaw.com

---

[11]    *See* 15 U.S.C. § 7001(a)(1); TEX. BUS. & COM. CODE § 322.007(a), (d). *See also Soto*, 2021 U.S. Dist. LEXIS 171040, at *9; *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517 (permitting electronic signatures on consent forms) (collecting sources).

**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, TX 76102
Phone: 817-479-9229
Fax: 817-840-5102
ATTORNEYS FOR PLAINTIFFS
AND COLLECTIVE MEMBERS

### CERTIFICATE OF SERVICE

I certify that on September 23, 2024 the above document will be filed via CM/ECF, which will cause a copy to be served on all counsel of record.

/s/ Drew N. Herrmann
Drew N. Herrmann