FILED
February 7, 2025
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| **THERESA STRINGER**, individually and on behalf of all others similarly situated pursuant to 29 U.S.C. § 216(b), <br><br> Plaintiffs, <br><br> v. <br><br> **BIG TEXAN STEAK RANCH, INC.** <br><br> Defendant. | CASE NO. 2:23-CV-00181-Z-BR |

### DEFENDANT BIG TEXAN STEAK RANCH, INC.'S SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR COURT-AUTHORIZED NOTICE

Instead of joining issue with Big Texan's arguments, Plaintiffs' Reply in Support of their Motion for Court-Authorized Notice (ECF 54) cites new evidence and attempts, unsuccessfully, to turn a wholly conclusory argument into something more. Some of the new "evidence," which Plaintiffs did not seek leave to submit, is grossly misleading, and some of it directly supports Big Texan's position. Accordingly, Big Texan files this brief sur-reply to address Plaintiffs' new evidence and arguments that it did not have the opportunity to address in its Response.

**I. Plaintiffs' new evidence does not show bartenders were paid less than minimum wage.**

Plaintiffs' Reply does not address Defendants' arguments and evidence showing that its bartenders make at least $8.50 an hour in direct wages, even before tips. *See, e.g.*, ECF 52-1 at 3, ¶ 9. Instead, Plaintiffs' Reply offers, for the first time, a snippet of testimony from Opt-In Plaintiff Evelyn Cera in which she testifies at one point that she made $6.75 an hour as a bartender. ECF

1

54 at 4 n.3, 66:7. But in further testimony (on the same page), Cera acknowledged she ***did not know*** what she made as a bartender. *Id.* at 66:8-18. Cera's testimony does not support the proposition that bartenders made only $6.75 an hour; it simply shows that Cera does not know one way or the other. This is particularly true in light of the undisputed evidence that she made $8.50 an hour in direct wages as reflected by her pay records.

Cera's pay records conclusively establish that she made more than minimum wage every shift she worked as a bartender. Those pay records do not show a single day where she made the $6.75/hour base wage without also making the performance-based wage (PBW) of $1.75/hour for the same number of hours – or a total of $8.50/hour in direct wages. *See* ECF-52-1 at 43-62; *see also* ECF 52-1 at 3-4, ¶¶ 9-10; ECF 51 at 13-14.[1] Plaintiffs do not even attempt to challenge this fact in their Reply. Nor do they challenge the fact that the bartenders ***always*** received, in addition to their base wage of $6.75, at least $1.75 an hour in PBWs—they just point out, unremarkably, that the pay summaries "reflect multiple rates for bartenders." ECF 54 at 3. Plaintiffs have not offered any explanation why the PBW wages do not count or why the two wage rates should not be added together. The fact that Big Texan pays its bartenders two types of wages does not change the fact that Big Texan paid its bartenders at least $8.50 an hour in direct wages. Plaintiffs have not begun to show that the bartenders were paid less than minimum wage—and without some evidence of a FLSA violation, notice should not issue. *See* ECF 51 at 10-12 & nn.6 & 7.

---

[1] For example, in the pay period covering August 23 through September 5, 2021, Cera made the regular rate of $6.75/hour for 63.55 hours ($428.96) and the PBW of $1.75/hour for 63.55 hours ($111.21) for her work as a bartender. ECF 50-10 at 8; *see also* 52-1 at 3, ¶ 7 (explaining that the job code of 000061 in the "Worked in Dept" section of the summary shows that the employee was working as a bartender for that pay period). Added up, her wages totaled $540.17, which when divided by the total number of hours results in an hourly rate of $8.50. ECF 50-10 at 8. The same result is reached by simply adding the two parts of the hourly wage, as $6.75/hour + $1.75/hour = $8.50/hour. Cera also received tips on top of these direct wages. *See id.*; ECF 52-1 at 3, ¶ 9 (declaration addressing this page of the pay summaries).

## II. Plaintiffs' new evidence does not show that bartenders were paid via the tip credit.

In their Motion, Plaintiffs made the conclusory assertion that Big Texan pays its bartenders pursuant to the tip credit—but they offered no specific contentions and, importantly, no evidence. Now, in their Reply, Plaintiffs for the first time point to three pieces of evidence that they claim show that Big Texan pays its bartenders $2.13 an hour and utilizes the tip credit to account for the rest of the required minimum wage. None of this late-offered evidence stands up on examination.

First, Plaintiffs cite to bartender pay summaries that contain lines for "*tip Credit" and "*tip Cr offset." ECF 54 at 4 (citing, *e.g.*, ECF 50-9 at 11). Plaintiffs did not mention these lines in their original Motion. *See* ECF 50-9 at 13, 15-27; 50-10 at 18,20-27. And they offer no testimony about these pay summaries, essentially asking the Court to speculate about what the lines mean.

More importantly, these lines on the pay summaries are red herrings, as these same documents unequivocally show that Big Texan used its own money (not tips) to pay bartenders wages of at least $8.50 an hour[2]—and the tip credit does not apply in situations where an employee makes more than minimum wage. *See Cazares v. 2898 Bagel & Bakery Corp.*, No. 18cv5953, 2022 U.S. Dist. LEXIS 65113, at *60 n.15 (S.D.N.Y. Apr. 7, 2022) ("As [the employee] was apparently paid above the regular minimum wage at all times during his employment, the law regarding the 'tip credit' is inapplicable here."), *adopted*, 2022 U.S. Dist. LEXIS 81202 (S.D.N.Y. May 4, 2022). Indeed, the tip credit only comes into play when an employer pays its tipped employees less than $7.25, as the whole point of the tip credit is to allow an employer to offset its minimum wage allegations. *See* 29 U.S.C. § 203(m)(2)(A); 29 U.S.C. § 206(a)(1)(C). Here, Plaintiffs' argument that bartenders are paid only $6.75 per hour completely ignores the fact that Big Texan also pays its bartenders $1.75 per hour as a PBW on top of the $6.75. The bottom line

---

[2] *See* above at 1-2 & n.1.

is that, because Big Texan uses its own money—not tips—to satisfy its minimum-wage obligations, the tip credit simply does not apply. *See* 29 U.S.C. § 203(m)(2)(A); *Cazares*, 2022 U.S. Dist. LEXIS 65113, at *60 n.15; ECF 52-1 at 3, ¶ 9 (explaining that the bartenders' wages totaling $8.50/hour are paid directly by Big Texan).

Second, Plaintiffs submitted as evidence and quoted for the first time in their Reply an unsigned and undated notice that Big Texan provides its employees who receive money from the tip pool, including bartenders. ECF 54-1 at 1. That notice incorrectly states that such employees, who are all tipped, will receive a cash wage of $2.13/hour plus tips, and it notifies the employees that Big Texan will take a tip credit up to $5.12/hour toward the hourly minimum wage obligation. *See id.* But Daniel Lee, Big Texan's Vice President and 30(b)(6) representative, testified in his deposition that the notice is "out of date" and inaccurate—not just for bartenders but for bussers, hosts, and server assistants/food runners. Exhibit 1 at 119:5-25; 120:7-122:21.

Third, Plaintiffs attempt to boost the outdated notice with some pages of Mr. Lee's testimony they did not address in their Motion. But even in these newly cited pages, Mr. Lee testified that the notice was just wrong. ECF 50-21 at 77:20-24; 78:3-15; 79:22-80:5. He further testified that bartenders would know how much they are paid when they are hired and go over it with Human Resources – and when they get to their first check. Exhibit 1 at 122:8-13.[3] Unsurprisingly, Plaintiffs did not cite *these* particular pages and lines in their Reply.

Simply put, not a single witness has testified that bartenders make $2.13/hour. And, returning once more to the pay summaries, there is not a single bartender pay summary where a

---

[3] As explained in Big Texan's Response, when Mr. Lee referred to $6.75 in this testimony, he was talking about bartenders' *base* wage and not the PBW—a fact he testified to on direct and cross. ECF 50-21 at 75: ECF 52:5 at 16-24; 109 at 120:7-22; 110 at 128:1-7; 111 at 130:5-13. Plaintiffs are well aware of the two wage payments but have chosen, inexplicably, to ignore the $1.75.

bartender made $2.13/hour for her bartending work. *See* ECF 52-1 at 18-34, 43-62; *see also* 52-1 at 3, ¶ 7 (explaining how to tell bartender summaries apart from server summaries).[4] There is also no witness testimony in the record that bartenders were paid via a tip credit. *Cf.* ECF 52-1 at 3, ¶ 9. Plaintiffs' "evidence" does not "support the conclusion" that the bartenders were paid less than minimum wage or that the tip credit has any application here. *Cf. Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 338 (5th Cir. 2023) (affirming denial of decertification when plaintiffs had *evidence* of an FLSA violation). Notice should not issue on the claim that bartenders make less than minimum wage or any claim based on that argument, including the tip credit.

## CONCLUSION AND PRAYER

For the reasons set forth above and in Big Texan's Response, Big Texan asks the Court to deny Plaintiffs' Motion for Court-Approved Notice. Big Texan further requests all other relief to which it may be justly entitled.

---

[4] Big Texan addressed the one exception, and how it was corrected well before suit was filed, in its Response. ECF 51 at 15-16.

Respectfully submitted,

**WEISBART SPRINGER HAYES LLP**
212 Lavaca Street, Suite 200
Austin, Texas 78701
512.652.5780
512.682.2074 fax

By: */s/ Julie A. Springer*
    Julie A. Springer
    State Bar No. 18966770
    jspringer@wshllp.com
    Geoffrey D. Weisbart
    State Bar No. 21102645
    gweisbart@wshllp.com
    Danielle K. Hatchitt
    State Bar No. 24079080
    dhatchitt@wshllp.com

Matt W. Sherwood
State Bar No. 24066063
**MCCARN, WEIR, & SHERWOOD, P.C.**
905 S. Fillmore, Suite 530
Amarillo, Texas 79101
806.350.5395
806.350.5388 FAX
msherwood@mwlawfirm.com

Casey S. Erick
Texas Bar No. 24028564
Brian T. Farrington
Texas Bar No. 00790667
**COWLES & THOMPSON, P.C.**
901 Main Street, Suite 3900
Dallas, Texas 75202
214.672.2138
214.672.2338 fax
cerick@cowlesthompson.com
bfarrington@cowlesthompson.com

**ATTORNEYS FOR DEFENDANT
BIG TEXAN STEAK RANCH, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record herein by way of:

☐ U.S. Mail, First Class
☐ Certified Mail
☐ Facsimile
☐ Federal Express
☐ Hand Delivery
☒ ECF (electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

on this 6th day of November 2024, to wit:

Drew N. Herrmann
Pamela G. Herrmann
HERRMANN LAW, PLLC
801 Cherry Street, Suite 2365
Fort Worth, Texas 76102
817.479.9229
817.840.5102 fax
drew@herrmannlaw.com
pamela@herrmannlaw.com

**ATTORNEYS FOR PLAINTIFFS**

*/s/ Julie A. Springer*
Julie A. Springer

# EXHIBIT B-1

```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF TEXAS
 2                          AMARILLO DIVISION

 3   THERESA STRINGER,              )
     individually and on behalf     )
 4   of others similarly            )
     situated pursuant to           )
 5   29 U.S.C. 216(b),              )
                                    )
 6        Plaintiffs,               )   Civil No. 2:23-cv-00181
                                    )
 7   vs.                            )
                                    )
 8   BIG TEXAN STEAK RANCH,         )
     INC.,                          )
 9                                  )
          Defendant.                )
10

11

12

13   ------------------------------------------------------------
                     ORAL VIDEOTAPED DEPOSITION OF
14                          DANIEL MARK LEE
                            AUGUST 23, 2024
15   ------------------------------------------------------------

16

17

18

19

20

21          ORAL VIDEOTAPED DEPOSITION OF DANIEL MARK LEE,
     produced as a witness at the instance of the PLAINTIFFS,
22   and duly sworn, was taken in the above-styled and
     numbered cause on AUGUST 23, 2024, from 10:39 a.m. to
23   3:27 p.m., at the offices of MCCARN WEIR & SHERWOOD,
     P.C., 905 South Fillmore Street, Suite 530, Amarillo,
24   Texas, before SHARON D. LIVINGSTON, CSR-RPR, in and for
     the State of Texas, reported by machine shorthand, and
25   pursuant to the Federal Rules of Civil Procedure.
```

```
 1      Q.  All right.  Do you have -- can you pull out
 2  Exhibit 22, please?
 3      A.  Yes, the Notice to Employees of Tip Pool or the
 4  tip pool recipients, those.
 5      Q.  Okay.  So Exhibit 22 is the document that is
 6  the Notice to Tip Pool Recipients, correct?
 7      A.  That's correct.
 8      Q.  And do you recall when Mr. Herrmann was asking
 9  you questions about that document?
10      A.  I do.
11      Q.  And he asked you if it read or stated that the
12  employees that receive that notice were told they were
13  being paid $2.13 an hour?
14      A.  Yes.
15      Q.  Do you recall that?
16      A.  Yes.
17      Q.  Okay.  Is that accurate?
18      A.  No, it's not.
19      Q.  Okay.
20      A.  It was discovered --
21              Excuse me.  I'm sorry.
22      Q.  No.  And -- and -- no.  Go ahead.
23      A.  I was just going to say it was discovered
24  that this didn't -- that these were also somewhat out of
25  date.
```

```
 1      Q.   Okay.  And when was that discovered?
 2      A.   During this litigation.
 3      Q.   Okay.  So let's talk about how much your
 4 bartenders are paid.  Did you talk to payroll to
 5 determine how much your bartenders are paid?
 6      A.   Yes.
 7      Q.   Okay.  And how much are the bartenders paid at
 8 Big Texan?
 9                MR. HERRMANN:  Objection, legal
10 conclusion.
11                MS. SPRINGER:  What is that a legal
12 conclusion for?
13                MR. HERRMANN:  You're asking how much
14 they're paid.
15      Q.   (BY MS. SPRINGER)  Okay.  Let me go at it this
16 way.  I think I understand what the objection is.
17                How much do they receive per hour?
18      A.   $8.50.
19      Q.   And what is that $8.50 per hour hourly rate
20 made up of, comprised of?
21      A.   A base wage of $6.75 and a performance-based
22 wage of $1.75 an hour.
23      Q.   And do they receive direct tips?
24      A.   Yes, they do.
25      Q.   And do they also participate in the tip pool?
```

```
 1      A.   Yes, they do.
 2      Q.   Okay.  Let's go to bussers.  What is the hourly
 3 rate that the bussers receive at the Big Texan?
 4      A.   $6.88.
 5      Q.   An hour?
 6      A.   Yes.
 7      Q.   And what is that comprised of?
 8      A.   A $2.13 base wage and a $4.75
 9 performance-based wage.
10      Q.   Do they also participate in the tip pool?
11      A.   Yes, ma'am.
12      Q.   Let's talk about your hosts.  What is the
13 hourly rate of your hosts at the Big Texan?
14      A.   $2.13 an hour.
15      Q.   Do they also receive a performance-based wage?
16      A.   Yes, ma'am.
17      Q.   How much is that?
18      A.   $4.75.
19      Q.   So what is their total hourly rate?
20      A.   $6.88.
21      Q.   Do they also participate in the tip pool?
22      A.   Yes, they do.
23      Q.   Let's talk about your server assistants, also
24 known as food runners.  What is their hourly rate?
25      A.   $7.88.
```

| | | |
|---|---|---|
| 1 | Q. | And do they also parti -- |
| 2 | | Well, what is that comprised of? |
| 3 | A. | Their base rate of $2.13 an hour. |
| 4 | Q. | And what else? |
| 5 | A. | A performance-based wage. |
| 6 | Q. | And do they also participate in the tip pool? |
| 7 | A. | Yes, ma'am. |
| 8 | Q. | All right.  Now, how do servers, bartenders, bussers, hosts, server assistants/food runners, how do they determine -- or how do they know how much they are being paid per hour? |
| 12 | A. | They go over it when they're hired when -- in human resource and also on their check. |
| 14 | Q. | Okay.  And do these employees that we've just described, do they have access to their pay summaries in ADP? |
| 17 | A. | Yes.  That's part of their hiring -- hiring pol -- or excuse me -- part of their hiring packet that they are -- they are told that they have access.  They can go online, and they can check at any time what their status of their -- of their ADP account is. |
| 22 | Q. | Do you remember when Mr. Herrmann was talking to you about server side work? |
| 24 | A. | Yes. |
| 25 | Q. | You mentioned there are team leads? |