IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| THERESA STRINGER, a/k/a THERESA LOPEZ-GONZALES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BIG TEXAN STEAK RANCH, INC.,<br><br>Defendant. | 2:23-CV-181-Z-BR |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

Before the Court is Plaintiffs' Motion for Court-Authorized Notice ("Motion") (ECF No. 49), filed on September 23, 2024. Plaintiffs seek to bring their claims in this case as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and request that the Court authorize notice to prospective collective members.

The Court construes Plaintiffs' Motion both as a request to certify the collective action and then issue notice. *See Helgason v. Perry's Rests., Ltd*, No. 3:20-CV-1573, 2021 WL 9145369, at *1 (N.D. Tex. Nov. 10, 2021) (considering plaintiff's "Motion in Support of Issuing Court-Authorized Notice to Similarly Situated Employees" after first denying certification of a FLSA collection action). After considering the parties' pleadings, evidence, and relevant law, the Court determines that Plaintiffs' Motion is **GRANTED in part and DENIED in part**.

**BACKGROUND**

Big Texan is a popular steakhouse located in Amarillo, Texas, often recognized for its "72-Ounce Steak Challenge." *See* ECF No. 52-1 at 2. Theresa Stringer and 36 opt-in plaintiffs

(together, the "Plaintiffs"), all current and former employees of Big Texan, filed this lawsuit alleging various FLSA violations. ECF No. 1. Specifically, Plaintiffs argue that Big Texan servers and bartenders, allegedly paid a "subminimum hourly wage of less than $7.25 per hour," were required to participate in three practices violative of FLSA: (1) contributing to a tip pool not "distributed among customarily and regularly tipped employees;" (2) paying for "mandatory uniforms and other non-203(m) items;" and (3) performing "non-tipped work unrelated to their tipped occupation as servers and bartenders." ECF No. 49 at 13–18. This purportedly shows that Plaintiffs — along with other Big Texan servers and bartenders — were subjected to the same Big Texan employment policies such that the instant case should proceed on a collective basis, entitling potential collective members to receive notice of their right to join the action. *Id.* at 8.

Specifically, Plaintiffs request that all Big Texan servers and bartenders who were paid at some point during the three-year period since filing of the Complaint be permitted to opt-in. ECF No. 49 at 20. In addition, Plaintiffs request (1) that Defendant be ordered to produce a list of contact information for all potential members of the collective; (2) that Plaintiffs' proposed notice forms be transmitted using mail, electronic mail, and text message; (3) that Plaintiffs' counsel be permitted to maintain a website featuring the proposed mail notice; (4) that a 90-day opt-in period be provided; and (5) that a reminder notice be sent 30 days after initial notice is sent. ECF No. 49 at 20–22.

**LEGAL STANDARD**

An employee is permitted to bring an action for a violation of FLSA either individually or as a collective action on behalf of herself "and other employees similarly situated." 29 U.S.C. § 216(b). Previously, courts handling collective-action certifications were guided by a two-step approach: a court could conditionally certify a collective at the outset of the case, and later make

a final and "actual" certification at the end of discovery. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). The Fifth Circuit recently rejected this approach, offering a new framework for assessing whether collective action certification is appropriate. *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021) ("Lusardi has no anchor in the FLSA's text or in Supreme Court precedent interpreting it . . . We therefore reject Lusardi's two-step certification rubric."). Now, only two considerations guide a district court faced with certifying a collective action: (1) FLSA's limiting language, declaring that only "similarly situated" employees may proceed as a collective; and (2) "the Supreme Court's admonition that while a district court may 'facilitat[e] notice to potential plaintiffs' for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation." *Id.*

But despite such considerations, the text of FLSA fails to provide a proper bedrock for certification analysis. FLSA lacks any definition of "similarly situated" and does not even mention the term "certification." *Id.* at 435–36. This requires district courts to "rigorously scrutinize the realm of 'similarly situated' workers" from the outset of the case. *Id.* Still, the plaintiff bears the burden of showing that potential collective-action members are similarly situated, using more than mere "conclusory statements" and affidavits that are not "substantial and detailed." *Trottier v. FieldCore Servs. Sols., LLC*, No. 2:20-CV-186, 2022 WL 658765, at *2 (N.D. Tex. Mar. 4, 2022); *Lopez-Gonzales v. Ramos*, No. 2:20-CV-061, 2021 WL 3192171, at *5 (N.D. Tex. July 28, 2021). "The presence of a common policy, plan, or practice affecting all putative class members" can be helpful in assessing whether proposed putative collective-action members are similarly situated. *Trottier*, 2022 WL 658765, at *3. But, if named plaintiffs and prospective opt-ins are too diverse to be deemed "similarly situated" —or if plaintiffs have failed to satisfy their burden of establishing similarity — certification may fail. *Swales*, 985 F.3d at 443. The bottom line is this:

3

a district court, in the context of FLSA certification, possesses "broad, litigation-management discretion." *Id.*

Only after the district court determines that certification of a collective is appropriate can opt-in notices be issued. *Id.* A similarly situated employee inclined to join the suit should receive "accurate and timely notice" to reap the benefits of a FLSA collective action. *Id.* at 435; *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 173 (1989).[1] However, employees do not have an inherent right to receive notice; rather, district courts have discretion regarding the decision to send notice following certification. *Swales*, 985 F.3d at 435–36. A court's oversight regarding a collective action and corresponding notice process must be agnostic and scrupulously respect judicial neutrality. *Id.* at 436. To be sure, "district courts must take care to avoid even the appearance of judicial endorsement of the merits of the action. No judicial thumbs (or anvils) on the scale." *Id.*

### ANALYSIS

FLSA requires employers to pay employees at least the federal minimum wage, currently set at $7.25 per hour. 29 U.S.C. § 206(a). However, FLSA contains a carve-out for tipped employees — those who "customarily and regularly receive[] more than $30 a month in tips." *Id.* § 203(t). This carve-out permits employers to pay tipped workers *less* than the minimum wage if their direct hourly pay, plus tips earned, adds up to at least $7.25 per hour. *Id.* § 203(m)(2)(A). In practice, this requires employers to pay tipped workers at least $2.13 per hour, as the maximum tip credit an employer can claim is $5.12 per hour. Any discrepancy between the $2.13 payment floor and the $7.25 federal minimum wage requirement can be "credited" through tips earned. *Id.*

---

[1] *Hoffmann-La Roche* is a case involving the Age Discrimination in Employment Act, containing a provision identical to Section 216(b) of FLSA. Courts consistently apply *Hoffmann-La Roche* in the context of FLSA cases. *See generally Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021); *In re JP Morgan & Chase*, 916 F.3d 494 (5th Cir. 2019).

4

This "tip credit" is an affirmative defense to the full payment of minimum wage and, when raised, requires an employer to inform its employee that it will take a tip credit and allow tipped employees to keep the tips they earn. *Lopez-Gonzales*, 2021 WL 3192171, at *2.

Relevant to this case, there are two scenarios wherein a tip credit may *not* be taken by an employer. The first instance surrounds tip pools. The text of FLSA provides an exception to the general rule that employees may keep the tips they receive, permitting "the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2)(A)(ii). In other words, FLSA permits employers to require employees to combine or "pool" their tips and share them equally among other employees who typically receive tips, such as waiters, bussers, and bartenders. If this exception is not satisfied — by forcing an employee to share tips with those who do *not* customarily and regularly receive tips — then an employer may not legally take a tip credit. *Id.* The second instance concerns "dual jobs," where an employee "regularly engages in distinct occupations for the same employer." *Rest. Law Ctr. v. U.S. Dep't of Lab.*, 120 F.4th 163, 166–67 (5th Cir. 2024). An employee would hold dual jobs when, for example, he is employed as both a waiter and a maintenance man — "unrelated and separate occupations." *Id.* at 167, 174. In that case, a tip credit is only available when the employee is working in the tipped occupation. *Id.* at 174.

Here, Plaintiffs assert that Defendant is barred from claiming a tip credit and contend they have satisfied their burden of showing that all Big Texan servers and bartenders are similarly situated. ECF No. 49 at 7–8. Plaintiffs provide numerous declarations, employee paystubs, and deposition transcripts to support the contention that they — along with potential opt-in plaintiffs — are similarly subjected to the same Big Texan policies and practices.[2]

---

[2] *See* ECF Nos. 50-1 (Shahen Declaration), 50-2 (Johnson Declaration), 50-3 (Whitener Declaration), 50-4 (Nunez Declaration), 50-5 (Johnson Paystubs), 50-6 (Shahen Paystubs), 50-7 (Nunez Paystubs), 50-8 (Garcia Paystubs), 50-9

### I. Plaintiffs are similarly situated as to their tip-pool claim.

Plaintiffs first argue that Big Texan does not qualify for the tip credit because they require all servers[3] to "contribute 3% percentage [sic] of each servers' [sic] tips to a mandatory tip [pool] at the end of each shift," which is not distributed among customarily and regularly tipped employees. ECF No. 49 at 15. In response, Defendant argues that "Plaintiffs' Motion is devoid of any facts, explanation or even legal argument" demonstrating what Big Texan tip-pool policy is at issue. ECF No. 51 at 17.

Plaintiffs have met their burden here, sufficiently showing that Big Texan servers are all subjected to a tip-pooling policy. Correctly, Plaintiffs' declarations discuss Big Texan employees' personal knowledge of the tip-pooling policy — a requisite of proper declarations. *See, e.g., Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 762 (N.D. Tex. 2013) ("Declarations must be based on personal knowledge."); *cf. Helgason*, 2021 WL 9145369, at *3 (finding that plaintiffs failed to meet their burden where no declarations relied on personal knowledge). To be sure, nearly all of Plaintiffs' declarations contain the following identical statement evidencing personal knowledge: "All servers, including myself, were required to participate in a mandatory tip pooling arrangement implemented by Defendant. *Based on my employment* and working with other servers at Big Texan, I know that all servers, including myself, were required to contribute a percentage of our tips earned each shift to the mandatory tip pool." ECF Nos. 50-1, 50-2, 50-3, 50-4 (emphasis

---

(Whitener Paystubs), 50-10 (Cera Paystubs), 50-11 (Stringer Paystubs), 50-21 (Lee Deposition), 54-1 ("Notice to Employees"), 54-2 (Cera Deposition).

[3] The Court is unsure whether Plaintiffs intend to claim that both servers and bartenders, or just servers, are required to contribute to a mandatory tip pool. *Compare* ECF No. 49 at 6 ("Plaintiffs worked as *servers and bartenders* . . . [and] were illegally required to contribute a portion of their tips to a tip pool . . . ."), *and* 7 ("As a result of Defendant's common policies applied to all *servers and bartenders* . . . ."), *with* 13 (" [Defendant's tip pooling policies] requir[e] all *servers* to contribute tip[s] to a mandatory tip pool . . . .") (emphases added). For purposes of the instant Motion, the Court chooses to construe Plaintiffs' tip-pool argument as applying only to servers, as this appears to align best with Plaintiffs' intended scope of argument. *See* ECF No. 54 at 4 n.4 (where Plaintiffs assert that only servers are subject to Big Texan's tip-pooling policy).

added). In addition, each declarant states that he or she has "personal knowledge of each fact set forth" in the declarations. *Id.* The declaration of Big Texan Vice President Daniel Lee is also instructive, stating that all servers are required to contribute a portion of their tips to a shared tip pool. ECF No. 50-21 at 20–21 (Daniel Lee responding in the affirmative after being asked whether servers have "always been required to contribute a portion of their tips to Big Texan for a tip pool").

Plaintiffs cite a job description for Big Texan Server Assistants to support their contention, but this description contains no direct mention of any tip-pooling policy. ECF No. 50-20. And determining whether certain types of employees — like Server Assistants — are properly or improperly included in the tip pool is beside the point. The Court focuses only on whether all servers are subjected to a similar tip-pooling policy, thereby justifying a collective proceeding. *See Meine v. TCHDallas2, LLC*, No. 3:23-CV-968, 2024 WL 3345836, at *4 (N.D. Tex. July 9, 2024) ("Defendants purport to prove that floor managers were eligible to participate in the tip pool with dealers, but this is beside the point. The Court is deciding whether the similarities among the dealers justify a collective proceeding, not whether the dealers have valid claims."). Although Plaintiffs fail to furnish the tip-pooling policy itself, the provided declarations contain enough evidence to show that all Big Texan servers are subjected to the same tip-pooling policy. Thus, Big Texan servers are similarly situated as to their tip-pooling policy claim.

**II. Plaintiffs are similarly situated as to their uniform claim.**

Plaintiffs next argue that Big Texan servers and bartenders are "required to pay for mandatory uniforms and other non-203(m) [items], including items such as cowboy hat [sic], western style shirts, cowboy boots, [and] server book [sic]." ECF No. 49 at 16. Plaintiffs claim

7

that Big Texan does not pay or reimburse its servers for these expenses, "illegally shift[ing] its costs and business expenses onto its employees." *Id.*

Plaintiffs have also met their burden here. Plaintiffs' declarations state that servers and bartenders pay for "specific mandatory uniforms, tools, and other business-related items such as hats, shirts, shoes, bolo [sic], and serve books that [are] required to work at Big Texan each shift," and that they knew that "other servers and bartenders [are] subject to the same uniform policy and requirements" from working alongside other employees and from Big Texan's own policies. ECF Nos. 50-1, 50-2, 50-3, 50-4. Plaintiffs also include copies of Big Texan's Dress Code and Uniform Policy, further detailing the types of attire required of servers and bartenders. ECF Nos. 50-12, 50-13, 50-14, 50-15.

Plaintiffs' sworn declarations provide sufficient evidence that servers and bartenders were subjected to a common policy or plan requiring them to pay for specific clothing items or server books. Thus, Big Texan servers and bartenders are similarly situated as to their uniform claim.

### III. Plaintiffs are similarly situated as to their dual-jobs claim.

Finally, Plaintiffs contend that Big Texan servers and bartenders are subject to an employment policy requiring them to "perform a number of non-tipped duties unrelated to their tipped occupation." ECF No. 49 at 17. Plaintiffs' declarations state that they "regularly performed various non tipped duties unrelated" to their jobs as servers, including "deep cleans (i.e., cleaning different areas of the restaurant); dishwasher duties (i.e., washing and scrubbing trays); and food expeditor duties (i.e., preparing dressings, preparing loaded cups for bake[d] potatoes, restocking condiments in the kitchen)." ECF Nos. 50-1 at 2, 50-2 at 1–2, 50-3 at 2, 50-4 at 2. Plaintiffs also provide copies of Big Texan's Openers Checklist, AM and PM Side Work Assignments, Cleaning Duties, and the Bar Cleaning Schedule. ECF Nos. 50-16, 50-17, 50-18, 50-19. These lists feature

8

required work tasks such as cleaning trays, taking out trash, assembling condiment cups, and stocking beverage stations. *Id.*

Plaintiffs have met their burden of showing that all Big Texan servers and bartenders are subject to the same employment policy regarding performance of allegedly non-tipped duties. Although servers and bartenders may each complete different groupings of tasks on any given day — preparing condiment cups on one day and stocking hand sanitizer the next — such differences are not material to Plaintiffs' claims and do not diminish evidence of a common policy applied by Big Texan. *See Francis-Luster v. Kelley L. Firm, P.C.*, No. 3:19-CV-2708-L-BK, 2022 WL 822468, at *3 (N.D. Tex. Feb. 10, 2022) (finding sufficient similarity even when potential members' work settings are different, unless liability turns on those differences). However, the Court does not reach so far as to determine whether the instant claim rises to the level of a dual-jobs violation; as discussed above, the only inquiry at present is "whether merits questions can be answered collectively." *Helgason*, 2021 WL 9145369, at *2. Thus, Big Texan servers and bartenders are similarly situated as to their dual-jobs claim.

\* \* \*

For the foregoing reasons, the Court finds that Plaintiffs and prospective collective members are similarly situated as to their tip-pooling, uniform, and dual-job claims, such that certification of a collective on these matters is appropriate.

### IV. Notice measured from the date of the Court's Order and covering a three-year period is appropriate, as well as a 90-day opt-in period and 30-day reminder communication.

The Court must ascertain whether opt-in notices should issue to prospective collective action members. "[F]ederal judges have the power to authorize the sending of notice to potential FLSA class members to inform them of the action and give them opportunity to participate by

9

opting in." *Lopez-Gonzales*, 2021 WL 3192171, at *8 (citing *Tillis v. Glob. Fixture Servs.*, No. 4:19-CV-1059, 2020 WL 1443490, at *6 (S.D. Tex. Mar. 23, 2020)). Because Big Texan servers are similarly situated with regard to the tip-pooling policy, and both servers and bartenders are similarly situated with regard to the uniform and dual-jobs claims, the Court authorizes the sending of notice to these individuals.

### A. *Methods of distribution*

Plaintiffs propose sending notice using mail, electronic mail, and text message, and also seek to maintain a website limited to posting their proposed mail notice. ECF Nos. 49 at 20–21, 50-22, 50-23. Defendant objects to Plaintiffs' proposed website as unnecessary. ECF No. 51 at 29. As "courts have wide discretion in deciding . . . how notice is distributed," this Court concludes that issuance of Plaintiffs' proposed notices via mail, electronic mail, and text message is proper. *Lopez-Gonzales*, 2021 WL 3192171, at *8; *Cervantez v. TDT Consulting, LLC*, No. 3:18-CV-2547, 2019 WL 3948355, at *10 (N.D. Tex. July 22, 2019) (finding notice distribution through mail, email, and text message to be permissible); *Sanchez v. 600 N. Akard LLC*, No. 3:23-CV-540, 2023 WL 9472842, at *7 (N.D. Tex. Dec. 26, 2023) (finding notice distribution through mail and text message to be permissible).

However, the Court denies Plaintiffs' request to create and maintain a website. It is of primary importance for this Court to ensure judicial neutrality, and the "public nature of the internet . . . is akin to 'claim solicitation.'" *Lopez-Gonzales*, 2021 WL 3192171, at *9. Further, Plaintiffs have not explained why the other requested forms of notice would be inadequate in communicating accurate and timely notice.

### B. *Content of notice*

Plaintiffs attach copies of their proposed notice forms to be sent via mail, electronic mail, and text message. ECF Nos. 50-22, 50-23. Defendant objects to Plaintiffs' language choices "for a variety of reasons" and states that the notices do not provide them "an opportunity to state their position." ECF No. 51 at 29.

The Court disagrees with Defendant's contention that the issued notices must state Big Texan's defense theories. The proposed language is not one-sided or argumentative, and Plaintiffs' suggested mail notice specifically states that "Big Texan disputes the allegations or any liability arising from the allegations." *Arceo v. Orta*, 296 F. Supp. 3d 818, 826 (N.D. Tex. 2017); ECF No. 50-22 at 1. Additionally, Defendant provides no specific reasons why Plaintiffs' language choices are problematic; generally objecting "for a variety of reasons" without further explanation is inadequate. Plaintiffs' proposed notices are sufficient.

### C. *Opt-in period and reminder notices*

Plaintiffs request a 90-day opt-in period running from the initial date of notice transmission. ECF No. 49 at 22. Defendant contends that a 90-day opt-in period is too long, but this objection lacks force. ECF No. 51 at 28. Although a notice period of 60 days is often the default, courts commonly approve notice periods of 90 days within the context of FLSA collective actions. *See, e.g., Arceo*, 296 F. Supp. 3d at 826 (approving an opt-in period of 90 days); *Winkler v. Sunbelt Rentals, Inc.*, No. 3:12-CV-3789, 2013 WL 12137735, at *5 (N.D. Tex. June 21, 2013) (approving an opt-in period of 90 days); *McCloud v. McClinton Energy Grp., L.L.C.*, No. 7:14-CV-120, 2015 WL 737024, at *10 (W.D. Tex. Feb. 20, 2015) (noting that "opt-in periods commonly range from as little as 30 to as many as 120 days"). Defendant provides no reason why a 60-day opt-in period would be less burdensome than a 90-day period, leaving the Court "to infer

that [Defendant] prefers a shorter notice period simply because it hopes that fewer plaintiffs will opt in as a result." *Arceo*, 296 F. Supp. 3d at 826.

Further, Plaintiffs seek permission to send a reminder notice after 30 days to prospective collective members who have not yet responded to the initial notice. ECF No. 49 at 22. Defendant objects, stating that Plaintiffs' have "fail[ed] to show why a reminder is necessary" and that such correspondence could be interpreted as improper encouragement by the Court to join the suit. ECF No. 51 at 24. This Court does not find that a 30-day reminder would be overly burdensome or communicate an appearance of judicial impropriety, as courts have often approved follow-up communications. *See, e.g., Cervantez*, 2019 WL 3948355, at *12 (a "follow-up communication after 30 days" is permissible); *Sanchez*, 2023 WL 9472842, at *7 (same); *Meadows v. Latshaw Drilling Co., LLC*, No. 3:15-CV-1173, 2016 WL 11664389, at *5 (N.D. Tex. Feb. 24, 2016) (permitting a reminder after 60 days). Accordingly, the Court determines that a 90-day opt-in period with a reminder after 30 days is reasonable.

### D. Notice coverage

Plaintiffs request that the opt-in notices cover a three-year period beginning on the date the Complaint was filed. ECF No. 49 at 20–21. Defendant contends that notice "should be based on the date of the Court's order granting notice, not on the date the complaint was filed." ECF No. 51 at 28. The Court construes Plaintiffs' request as relating to the appropriate statute of limitations period.

29 U.S.C. Section 255 provides the relevant statute of limitations period under FLSA, requiring an action to commence within two years after the cause of action accrued if the violation was "unwillful" and within three years if the violation was "willful." 29 U.S.C. § 255. Unlike the limitation period in class actions — which is automatically tolled for potential class members upon

filing — the limitations period in the collective-action context continues to run until an opt-in plaintiff files written consent to join. *Kalenga v. Irving Holdings, Inc.*, No. 3:19-CV-1969, 2020 WL 2841396, at *6 (N.D. Tex. June 1, 2020); 29 U.S.C. § 256. However, it is within a court's discretion to toll the limitations period on equitable grounds in rare and exceptional cases. *Blundell v. Home Quality Care Home Health Care, Inc.*, No. 3:17-CV-1990, 2018 WL 276154, at *5 (N.D. Tex. Jan. 3, 2018). But Congress has not provided for tolling while a court considers collective-action certification, instead "express[ing] concern that an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitations period was tolled by the filing of the original complaint." *Cervantez*, 2019 WL 3948355, at *12 (quoting *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 808 (S.D. Tex. 2010)).

Here, Plaintiffs have identified zero rare or exceptional circumstances justifying equitable tolling — in fact, it remains unclear if Plaintiffs are even requesting this equitable remedy.[4] For this reason, and in adherence to the strict construction of FLSA's limitation provision, this Court determines that equitable tolling is not warranted in the instant case. Accordingly, notice should cover a three-year period beginning on the date of this Court's Order. *See, e.g., Floyd v. Stryker Corp.*, No. 3:22-CV-1131, 2024 WL 24341, at *7 (N.D. Tex. Jan. 2, 2024) (basing notice on the date of the court's order); *Snively v. Peak Pressure Control, LLC*, 174 F. Supp. 3d 953, 963 (W.D. Tex. 2016) (declining to measure the limitations period from the date plaintiff's complaint was filed).

### E. *Production of information for notice distribution*

Plaintiffs request that Defendant produce a list of "names, last known addresses, telephone numbers, e-mail addresses, and dates of employment for all members of the collective" in a usable

---

[4] Only once do Plaintiffs mention "tolling the statute [sic] limitations," loosely discussing the concept in a footnote. ECF No. 49 at 19 n.8. Nowhere in Plaintiffs' Motion is there an explicit request for equitable tolling.

electronic format. ECF No. 49 at 20–21. Defendant does not appear to object to this request. Courts commonly order employers to produce such information for the purpose of facilitating collective-action notice. *See, e.g., Cervantez*, 2019 WL 3948355, at *11; *Sanchez*, 2023 WL 9472842, at *7; *Kalenga*, 2020 WL 2841396, at *6 (N.D. Tex. June 1, 2020). Hence, the Court orders Defendant to produce a list of names, addresses, telephone numbers, electronic mail addresses, and dates of employment of all prospective opt-in plaintiffs **within 14 days of entry of this Order**.

### F. *Complaint amendment*

Defendant requests that Plaintiffs' Complaint be amended to "accurately reflect what complaints are left in the case." ECF No. 51 at 27. Federal Rule of Civil Procedure 15 provides that a party "may amend its pleading once as a matter of course" no later than 21 days after serving it; after the expiration of this time period, a party can amend "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a). Here, more than 21 days have passed since filing of the Complaint, and the Court declines to grant leave to amend *sua sponte*. However, nothing in this Order should be construed as precluding Plaintiffs from seeking leave to amend their Complaint.

### CONCLUSION

For the above reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion for Court-Authorized Notice (ECF No. 49). Specifically, the Court:

- **GRANTS** Plaintiffs' request to certify a collection action and issue notice covering a three-year period;
- **DENIES** Plaintiffs' request to measure the limitations period from the date the Complaint was filed, instead requiring the limitations period to be measured from the date of this Order;

- **GRANTS** Plaintiffs' request to issue notice using mail, electronic mail, and text message, but **DENIES** Plaintiffs' request to maintain a website;

- **GRANTS** Plaintiffs' request for a 90-day opt-in period and follow-up communication 30 days after initial notice is issued;

- **DENIES** any inferred request by Plaintiffs to toll the statute of limitations; and

- **ORDERS** Defendant to produce a list of names, last known addresses, telephone numbers, electronic mail addresses, and dates of employment for all potential members of the collective in a usable electronic format **within 14 days of this Order**.

**SO ORDERED.**

February 27, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE