IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

THERESA STRINGER, a/k/a THERESA LOPEZ-GONZALES, *Individually and On Behalf of All Others Similarly Situated,*

Plaintiff,

v.

2:23-CV-181-Z-BR

BIG TEXAN STEAK RANCH, INC.,

Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is the parties' Joint Motion for Approval of Confidential Settlement Agreement ("Motion"), filed September 15, 2026. ECF No. 113. For the reasons herein, the Court can approve *most* of the terms of the proposed Settlement Agreement. However, the Court cannot approve the proposed service award for the class representative on this record. Accordingly, the Motion (ECF No. 113) is **DENIED without prejudice**.

**BACKGROUND**

This case is a collective action under the Fair Labor Standards Act ("FLSA"). ECF No. 1. Plaintiff Theresa Stringer filed the case on behalf "all current and former employees who worked at least one shift as a server or bartender" for Defendant Big Texan Steak Ranch ("Big Texan"). ECF No. 1 at 7.

The Complaint alleges Big Texan violated the FLSA's minimum hourly wage requirement. ECF No. 1 at 7–9. Under the FLSA, an employer is generally required to pay his employees at least $7.25 per hour. 29 U.S.C. § 206(a)(1). However, an employer can pay "tipped employees" (such as the servers and bartenders here) less because "the tips received by such employee" can cover a portion of that employee's statutory minimum wage. *Id.* § 203(m). The Complaint alleges that servers and bartenders at Big Texan were paid a direct

cash wage less than $7.25. ECF No. 1 at 7. Moreover, the Complaint alleges Big Texan "committed multiple violations of the tip credit," such that it cannot rely on tips to supplement the wage received by its servers and bartenders under Section 203(m). *Id.* at 8–9. Big Texan denies the allegations. ECF No. 11.

On February 27, 2025, the Court certified a collective action under the FLSA. ECF No. 60. After over a year of further discovery, the parties agreed to settle their claims. ECF Nos. 107, 113. Under the proposed Settlement Agreement, Defendants do not admit lability, but the parties agree to voluntarily dismiss their claims. ECF No. 111-1 at 3–5.[1] Defendant agrees to pay a total amount not publicly disclosed, and each Plaintiff will receive a *pro rata* share based on the number of hours they worked at Big Texan. *Id.* at 5, 7–8. One-half of each Plaintiff's payment is treated as wages, and the other half is treated as liquidated damages. *Id.* at 6. The Plaintiffs' law firm will receive an attorneys' fee award of one-third the total amount paid by Defendants. ECF No. 113. And the named Plaintiff will receive a "service award" in addition to her *pro rata* share of the fund. ECF No. 111-1 at 8. The terms of the settlement will remain confidential. *Id.* at 11. The parties now ask the Court to "approve" their proposed Settlement Agreement. ECF No. 113.

## Legal Standard

### I. Court Review of FLSA Settlements

The FLSA was passed to protect workers from "substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). Because of "unequal bargaining power as between employer and employee," Congress made

[1] The parties initially filed their proposed Settlement Agreement under seal. ECF No. 109. After the Court ordered the parties to explain their reasons for filing under seal (ECF No. 110), the parties filed a lightly redacted version of the proposed Settlement Agreement for public viewing. ECF No. 111-1. The Court has reviewed the unredacted version, but will cite to the publicly accessible, redacted version of the proposed Settlement Agreement where appropriate.

the provisions of the FLSA mandatory. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706–07 (1945); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982) ("Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees."). An employee cannot waive his rights under the FLSA to a statutory minimum wage, overtime pay for overtime hours, or liquidated damages. *Brooklyn Sav. Bank*, 324 U.S. at 706–07; *see also Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 164 (5th Cir. 2015) ("The general rule establishes that FLSA claims . . . cannot be waived.").

Because FLSA claims cannot be waived, "many courts have held that, in the absence of supervision by the Department of Labor or scrutiny from a court, a settlement of an FLSA claim is prohibited." *Bodle*, 788 F.3d at 164; *see also Lynn's Food Stores*, 679 F.2d at 1352–53 (describing the "only two ways" in which FLSA claims can be settled: (1) under supervision of the Secretary of Labor; or (2) a settlement "scrutinize[ed]" by the district court "for fairness"). This requirement does not derive from statutory text: The FLSA does not, by its terms, require court "approval" of a private FLSA settlement. *See* 29 U.S.C. § 216(b). Nonetheless, some judges reason that employers will pursue and receive unfair deals unless the employees can be "represented by an attorney who can protect their rights." *Lynn's Food Stores*, 679 F.2d at 1354. Thus, the reasoning goes, approval of private FLSA settlements reached outside the context of a lawsuit filed by the employees violates the "spirit of the FLSA." *Id.*[2]

However, the Fifth Circuit does not follow this "rule." In the Fifth Circuit, courts can enforce "unsupervised settlements that are reached due to a bona fide FLSA dispute over

[2] The Supreme Court has held the FLSA remedy of liquidated damages cannot be "bargained away" *even* "by bona fide settlements of disputes over coverage." *Schulte, Inc., v. Gangi*, 328 U.S. 108, 114 (1946).

hours worked or compensation owed." *Bodle*, 788 F.3d at 164; *see also Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 256 n.10 (5th Cir. 2012). With the exception of liquidated damages (which cannot be bargained away even in a bona fide dispute), the Supreme Court's precedents leave open the possibility of private settlement of FLSA claims. *See Brooklyn Sav. Bank*, 324 U.S. at 714 (1945) ("Our decision . . . has not necessitated a determination of what limitation, if any, Section 16(b) of the [FLSA] places on the validity of agreements between an employer and employee to settle claims arising under the Act if the settlement is made as the result of a bona fide dispute between the two parties, in consideration of a bona fide compromise and settlement."); *see also Schulte*, 328 U.S. at 114–15 (1946) ("Nor do we need to consider here the possibility of compromises in other situations which may arise, such as a dispute over the number of hours worked or the regular rate of employment."). In the Fifth Circuit, an unsupervised settlement that resolves a bona fide dispute over FLSA coverage is generally enforceable. *Martin*, 688 F.3d 247, 255 (5th Cir. 2012); *Bodle*, 788 F.3d at 165.

Nonetheless, the parties here ask the Court to "approve" their proposed Settlement Agreement. ECF No. 113.[3] It is common for district courts in the Fifth Circuit, including this Court, to review and approve FLSA settlement agreements. *See, e.g., Lee v. Metrocare Services*, 3:13-CV-2349, 2015 WL 13729679, at *3 (N.D. Tex. July 1, 2015) (O'Connor, J.); *Jones v. JGC Dallas LLC*, Case No. 3:11-CV-2743 (N.D. Tex. Dec. 24, 2014) (O'Connor, J.); *Quintanilla v. A & R Demolition Inc.*, Case No. H-04-1965, 2008 WL 9410399 (S.D. Tex. May 7, 2008); *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714 (E.D. La. 2008); *Diaz v. Panhandle Maintenance, LLC*, Case No. 2:18-CV-097 (N.D. Tex. Feb. 26, 2020). Accordingly, the Court will review the parties' proposed Settlement Agreement for approval.

---

[3] In their Motion to Seal the instant Motion, the parties acknowledged that the Fifth Circuit does not seem to require approval of settlements in the context of litigation over a bona fide FLSA dispute, and clarified that they seek the Court's approval "out of an abundance of caution." ECF No. 109 at 1–2.

## II. The Standard for Approval of FLSA Settlements

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores,* 679 F.2d at 1353 (citing *Schulte,* 328 U.S. at 113 n.8; *Jarrard v. Southeastern Shipbuilding Corporation,* 163 F.2d 960, 961 (5th Cir. 1947)). If the settlement reflects "a reasonable compromise over issues," the district court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

"The decision to approve a class action settlement is left to the district court's sound discretion." *Quintanilla,* 2008 WL 9410399, at *2 (citing *Newby v. Enron Corp.,* 394 F.3d 296, 300 (5th Cir. 2004)). As another district court in this Circuit has explained:

> The primary focus of the Court's inquiry in determining whether to approve the settlement of a FLSA collective action is not, as it would be for a Rule 23 class action, on due process concerns, but rather on ensuring that an employer does not take advantage of its employees in settling their claim for wages.

*Collins,* 568 F. Supp. 2d at 719 (citations omitted). The district court "should keep in mind the presumption in favor of finding a settlement fair and the overriding public interest in favor of settlement." *Lee,* 2015 WL 13729679, at *3 (citing *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977)).

The Court must consider two factors in approving a proposed Settlement Agreement that compromises claims under the FLSA: (1) whether the settlement resolves a bona fide dispute over FLSA provisions, and (2) whether the resolution is fair and reasonable. *Lee,* 2015 WL 13729679, at *1; *Collins,* 568 F. Supp. 2d at 719. The Court now turns to its analysis of these two factors.

## ANALYSIS

### I. Bona Fide Dispute

First, the Court must determine whether a bona fide dispute exists between the parties. *See Martin*, 688 F.3d at 255–56. Although adversarial litigation is often "indicative that the settlement is a resolution of a legitimate dispute," the mere presence of a lawsuit is "insufficient to satisfy the bona fide dispute requirement." *Lee,* 2015 WL 13729679, at *2 (citing *Lynn's Food Stores,* 679 F.2d at 1354; *Collins,* 568 F. Supp. 2d at 719–20). Instead, "there must also be some doubt regarding whether the plaintiffs will succeed on the merits." *Id.* (citing *Collins*, 568 F. Supp. 2d at 719–20); *see, e.g., Martin* 688 F.3d at 255–56 (finding a bona fide dispute where the parties disagreed about the number of hours for which they are owed their set rate of pay); *Martinez v. Bahls Bearing Equip. Co.,* 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005) ("Plaintiff's claim for overtime benefits under the FLSA is dependent upon whether there was a bona fide dispute as to the amount of hours worked or compensation due at the time the parties entered into the compromise and release at issue."); *Lee,* 2015 WL 13729679, at *5 (finding a bona fide dispute where the parties had "numerous disagreements as to the application of the FLSA including the amount of the overtime worked, the evidence necessary to substantiate the overtime worked, and the appropriate methodology for calculating compensation."). "In essence, the Court must ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Collins,* 568 F. Supp. 2d at 719 (citing 29 U.S.C. §§ 206, 207).

Applying this standard here, the Court finds a bona fide dispute exists. This litigation is approaching its three-year anniversary. ECF No. 1. While the mere presence of a lawsuit does not prove a bona fide dispute, active litigation over the span of three years supports such a finding. The parties have engaged in extensive discovery, including certification and

discovery on the merits. *See* ECF Nos. 18, 32, 37, 42, 45, 71, 78, 82, 87, 99. The parties vigorously disputed class certification based on their differing views of the merits of the case. *See, e.g.*, ECF No. 51. Even after certification and extensive discovery, numerous disagreements as to the legal and factual application of the FLSA remain, including whether certain Plaintiffs were paid below minimum wage, whether Big Texan could legally account for "tip credits," and whether Big Texan's employee dress code amounts to a "uniform." ECF Nos. 102, 105 (parties' motions for summary judgment, filed less than two weeks before settlement). The parties' factual and legal disputes demonstrate uncertainty about whether Plaintiffs will prevail on the merits. Moreover, both parties, through counsel, represent that this is a "bona fide dispute." ECF No. 111-1 at 1. They reached a settlement only after paying $2,000 for a four-hour mediation session with a professional mediator. ECF No. 107. And because Plaintiffs are represented by counsel, "the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354.

The protracted litigation, legal and factual disputes, and the parties' own statements through counsel all support a finding that this is a bona fide dispute. This is not a case where the parties are negotiating around the FLSA's mandatory requirements. *See Collins,* 568 F. Supp. 2d at 719. Accordingly, the Court finds the parties' proposed Settlement Agreement is a resolution to a bona fide dispute regarding FLSA coverage.

**II. Fair and Reasonable**

Second, the Court must scrutinize the terms of the proposed Settlement Agreement to ensure the resolution is fair and reasonable. *Lynn's Food Stores,* 679 F.2d at 1353, 1355 (citing *Schulte,* 328 U.S. 108; *Jarrard,* 163 F.2d at 961). Courts evaluate (1) the terms of the

settlement award; (2) attorneys' fees; and (3) service awards to class representatives. *See, e.g., Lee,* 2015 WL 13729679, at *2.

*A. The Terms of the Settlement Award*

When evaluating the terms of the settlement award, courts often perform an analysis similar to a Rule 23 settlement analysis. "Although Rule 23 does not control FLSA collective actions, many courts have adopted many of Rule 23's procedures in such actions by analogy, in an exercise of their discretion to manage the litigation of collective actions under Section 216(b)." *Collins,* 568 F. Supp. 2d at 721 (collecting cases). Thus, courts often consider the following six factors derived from Rule 23 Class Action litigation:

> (1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir. 1982); *see Lee,* 2015 WL 13729679 at *2. However, courts have discretion to "fashion appropriate procedures for review of FLSA collective actions," and vary the *Parker* factors "in light of the special role of the court in settlement of FLSA claims." *Lee,* 2015 WL 13729679 at *3 (quoting *Collins,* 568 F. Supp. 2d at 721–22).

To begin its analysis, the Court notes the settlement award treats every Plaintiff the same. The proposed Collective Agreement provides that counsel used a "single formula" to calculate the *pro rata* allocations for Named Plaintiff and all Collective Members. ECF No. 111-1 at 7. "[E]ach Collective Member's *pro rata* allocation is based on his or her share of the time worked as a server or bartender during the relevant class period as reflected in Defendant's payroll records." *Id.* at 7–8. Thus, the settlement award is fair as between the Plaintiffs.

Considering the *Parker* factors, the Court finds the proposed Settlement Agreement is a fair and reasonable settlement of the Collective Members' claims. As to the first factor, this settlement was reached between experienced counsel on both sides after years of contentious litigation. The settlement requires Defendants to pay a significant amount, and presumably requires Plaintiffs to accept payment of less than their claims are potentially worth if they succeeded at trial. The Court is therefore convinced that the settlement was negotiated at arms-length, and is not the result of fraud or collusion. The second, third, fourth, and fifth *Parker* factors are interrelated, so the Court considers them together. This litigation proceeded through two phases of discovery and to dispositive motion practice. Thus, Plaintiffs' experienced counsel has a good sense of Plaintiffs' likelihood of success on the merits and the range of possible recovery. Yet, despite the advanced stage of the litigation, the parties continue to dispute many legal and factual elements of the case. ECF Nos. 102, 105. Thus, settlement avoids further costs, delays, and uncertainties of trial and a potential appeal. The second through fifth *Parker* factors therefore favor a fair and reasonable finding. Considering the sixth *Parker* factor, Plaintiffs' counsel and the class representative both expressly agree to the settlement. *See* ECF No. 111-1 at 14. And the Court has not been informed that any absent Collective Member contests the settlement. Accordingly, the sixth *Parker* factor—and thus all the factors—favor a fair and reasonable finding.

Because the settlement award treats Plaintiffs fairly and equally, and the *Parker* factors favor a fair and reasonable finding, the Court finds that the terms of the settlement award are fair and reasonable.

*B. Attorneys' Fees*

"As a part of its fairness determination, a court must also assess the reasonableness of the proposed attorney's fees." *Lee*, 2015 WL 13729679 at *3 (citing *Strong v. BellSouth*

*Telecomms., Inc.*, 137 F.3d 844, 849–50 (5th Cir. 1998) ("To fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees."). The FLSA provides that the court "*shall* . . . allow a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b) (emphasis added).

There are two options for analyzing attorneys' fees in cases involving a common fund: the percentage method and the lodestar method. *See Union Asset Mgmt. Holding v. Dell, Inc.*, 669 F.3d 632, 642–43 (5th Cir. 2012). The Supreme Court has suggested calculation of attorneys' fees should be based on a percentage of the fund in common fund cases. *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *see also Lee*, 2015 WL 13729679 at *4 (O'Connor, J.). Under the lodestar method, on the other hand, attorneys' fees are computed "by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work." *Longden v. Sunderman*, 979 F.2d 1095, 1099 (5th Cir. 1992). The Fifth Circuit has expressly held that district courts may "choose between the percentage and lodestar methods in common fund cases." *Union Asset Mgmt.*, 669 F.3d at 644. Here, the Court will analyze the fees using the percentage method, because the parties have allocated attorneys' fees using the percentage method. *See id.* at 643–44 (choosing percentage method is appropriate when it is the method chosen by the parties).

Whether using the percentage or lodestar method to assess fees, district courts must "cross-check" their analysis with the twelve *Johnson* factors. *See Union Asset Mgmt.*, 669 F.3d at 644. Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience,

reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). After considering the *Johnson* factors, the district court decides if an upward or downward adjustment of the fee award is warranted. *See Longden*, 979 F.2d at 1099.

The Court now proceeds with its analysis under the percentage method. The proposed Settlement Agreement provides for an attorneys' fee award of exactly one-third (33.3%) of the gross settlement amount. ECF No. 113. That is on par with attorneys' fee awards in similar cases in this circuit. One district court in this Circuit has found "[t]he majority of common fund fee awards fall between twenty and thirty percent." *In re Harrah's Ent., Inc.*, Case No. 95-3925, 1998 WL 832574, at *4 (E.D. La. Nov. 25, 1998). But that same Court noted "[i]t is not unusual . . . for district courts in the Fifth Circuit to award percentages of approximately one[-]third." *Id.* Several district courts in this Circuit have approved awards at or over 30%, including up to 36%. *Lee*, 2015 WL 13729679 at *7 (collecting cases). "Fifty percent is the upper limit on a reasonable fee award in a common fund case." *In re Harrah's Ent.*, 1998 WL 832574, at *4.

Consideration of the *Johnson* factors supports the conclusion that the award is fair and reasonable. This case was actively litigated by experienced attorneys for nearly three years and involves complex legal and factual issues. The Plaintiffs' attorneys achieved a favorable settlement for their clients and are accepting an award that is in line with those awarded in similar cases. Accordingly, after consideration of the *Johnson* factors, the Court finds the proposed award of 33.3% is reasonable, even if it is marginally higher than usual.

*C. Service Award to the Class Representative*

"Service awards to class representatives are permissible where they are fair and reasonable." *Lee*, 2015 WL 13729679 at *4. "That does not mean, however, that [service] awards are always merited." *In re Heartland Payment Sys.*, 851 F. Supp. 2d 1040, 1089 (S.D. Tex. 2012). Courts in this Circuit have considered the following non-exhaustive factors when evaluating service awards:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp. 2d 847, 869 (S.D. Tex. 2011); *see also Lee*, 2015 WL 13729679 at *8 (considering the *Humphrey* factors). "[T]he case law in the Fifth Circuit suggests that 1% of the common fund is a reasonable benchmark for the upper-most bound of permissible service awards in typical cases." *Lee*, 2015 WL 13729679 at *8 (collecting cases).

Here, the *Humphrey* factors likely support a service award. The class representative was employed by Big Texan when she initiated this suit. ECF No. 1 at 9. Thus, she faced and may continue to face a risk of retaliation from her employer, in addition to the time and effort spent preparing and pursuing this case. However, the proposed Settlement Agreement provides for a service award to the class representative that is 1.7% of the total fund. ECF No. 113. Moreover, the service award is over seven times more than her *pro rata* share of the settlement fund. *Id.* The parties have not provided any justification for a service award that is so far over the presumptive upper-most bound for a "typical case." *See Lee*, 2015 WL 13729679 at *8 (the presumptive upper-most bound is 1%). Thus, the Court cannot approve the proposed service award.

## CONCLUSION

For the reasons above, the Motion (ECF No. 113) is **DENIED without prejudice**. The parties are **ORDERED** to either (1) file a renewed motion seeking approval of a settlement agreement; or (2) file a joint stipulation of dismissal **on or before Friday, November 13, 2026 at 5:00 p.m. (CST)**. If the parties file a renewed motion seeking approval of a settlement agreement, they must address the deficiencies identified in this order by modifying the service award, submitting evidence supporting the service award, or both.

**SO ORDERED.**

November 2, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE